1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| KHAALIQ BINNS, | Case No. 2:16-cv-05481-DSF-SHK |
| Plaintiff, | **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| D. ASUNCION, ET AL., | |
| Defendants. | |

16

This Report and Recommendation is submitted to the Honorable Dale S.
Fischer, United States District Judge, under 28 U.S.C. § 636 and General Order
05-07 of the United States District Court for the Central District of California.

**I.     SUMMARY OF RECOMMENDATION**

On September 11, 2017, Plaintiff Khaaliq Binns ("Plaintiff"), proceeding pro
se and in forma pauperis ("IFP"), constructively filed[1] his Second Amended
Complaint ("SAC") under 42 U.S.C. § 1983 ("§ 1983") against Defendants
Warden D. Asuncion ("Asuncion"), Correctional Officer Hunter ("Hunter"), and
Correctional Officer (Sergeant) Jameson ("Jameson") (collectively

---

[1] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to
court, the court deems the pleading constructively "filed" on the date it is signed. Douglas v.
Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (applying the mailbox rule to civil rights suits filed by
pro se prisoners).

1    "Defendants"), in their individual capacities.  Electronic Case Filing Number

2    ("ECF No.") 46, SAC at 3.  On August 19, 2019, Defendants filed a Motion to

3    Dismiss ("Motion" or "Mot."), under Fed. R. Civ. P. 12(b)(2), (5), and (6).  ECF

4    No. 68, Mot.  On September 24, 2019, Plaintiff filed an Opposition to the Motion

5    ("Opposition" or "Opp'n").  ECF No. 70, Opp'n.

6         For the reasons described below, the Magistrate Judge recommends:

7    (1) GRANTING IN PART and DENYING IN PART Defendants' Motion;

8    (2) DISMISSING Plaintiff's Claims against Defendant Asuncion;

9    (3) DENYING Defendants' Motion to dismiss the Eighth Amendment and

10   punitive damages claim; and

11   (4) DENYING, WITHOUT PREJUDICE, Defendants' Motion based on qualified

12   immunity.

13                    **II.    BACKGROUND**

14        **A.    Procedural History**

15        On July 11, 2016, Plaintiff constructively filed a § 1983 Complaint arising

16   from Plaintiff's claimed, improper assignment of Plaintiff to an upper bunk in a

17   state jail facility even though Plaintiff notified jail personnel that Plaintiff was to be

18   provided a lower bunk because of Plaintiff's medical condition.  ECF No. 1,

19   Complaint.  Plaintiff claimed these actions were in violation of the Eighth and

20   Fourteenth Amendments of the U.S. Constitution, and Plaintiff named several

21   defendants in their individual and official capacities.  See id.  After screening the

22   Complaint, the previously assigned Magistrate Judge found that the Complaint

23   sufficiently alleged claims under the Eighth and Fourteenth Amendments against

24   two defendants in their individual capacities and ordered Plaintiff to provide the

25   necessary information to serve those two defendants.  ECF No. 7, Order

26   Authorizing Service.

27        On November 8, 2016, Plaintiff constructively filed a First Amended

28   Complaint naming several new defendants, but involving the same claim of

1  improper placement of Plaintiff in an upper bunk in violation of Plaintiff's Eighth

2  Amendment rights.  See ECF No. 19, First Amended Complaint ("FAC").  The

3  FAC also named "unknown medical staff" as defendants because they allowed for

4  Plaintiff's placement despite medical documentation showing Plaintiff needed a

5  lower bunk.  Id. at 4.  On December 15, 2016, the previously assigned Magistrate

6  Judge allowed for the FAC to be served on three defendants in their individual

7  capacities.  ECF No. 22, Order Allowing Service of FAC.

8       On May 1, 2017, the Court issued a Report and Recommendation ("R&R")

9  dismissing the matter, without prejudice, for Plaintiff's failure to provide the

10  necessary service related documents and, as a result, failing to prosecute the

11  matter.  ECF No. 27, R&R re: Failure to Prosecute.  On May 11, 2017, Plaintiff filed

12  a request for an extension of time to provide the necessary materials, which the

13  Court granted, and withdrew the R&R for failure to prosecute.  ECF Nos. 29, 30.

14       Subsequently, Plaintiff provided materials to have the FAC served on

15  defendants and several defendants provided waivers of service.  ECF No. 38,

16  Waiver of Service.  On August 17, 2017, several of the defendants filed a motion to

17  dismiss the FAC.  ECF Nos. 41, 42.  Plaintiff then filed a motion for leave to amend

18  the FAC, which the Court granted, and Plaintiff filed a Second Amended

19  Complaint ("SAC").  ECF Nos. 44-46.

20       On March 18, 2018, Plaintiff filed a request for a settlement conference,

21  which, after the Court ordered a response, Defendants opposed.  ECF Nos. 51-53.

22  The matter was subsequently referred for settlement and a notice was filed

23  indicating that the parties did not settle the matter.  ECF Nos. 60, 64.

24       On August 29, 2019, Defendants filed the current Motion to Dismiss

25  ("Motion" or "Mot.") and, on September 24, 2019, Plaintiff filed an Opposition.

26  ECF Nos. 68, 70.  The matter stands ready for decision.

27

28

1       **B.      Summary Of SAC**

2               Plaintiff makes factual allegations in his SAC and also attached various

3       exhibits.  With respect to these exhibits, Plaintiff referred to some, but not all, of

4       them throughout the SAC.  For purposes of this Motion, the Court accepts as true

5       the factual allegations in the SAC and the appropriate exhibits and, construing

6       them in the light most favorable to Plaintiff, they are as follows.

7               Plaintiff was housed at Lancaster State Prison and, on December 10, 2015,

8       "Hunter attempted to move Plaintiff from" Plaintiff's lower bunk.  ECF No. 46,

9       SAC at 8.  In response, Plaintiff presented Hunter and another sergeant with a

10      "certified copy of Plaintiff's Chronos," which Plaintiff attached as exhibit A to the

11      SAC.  Id.  The first page of Exhibit A to the SAC is a document with Plaintiff's

12      name and California Department of Correction and Rehabilitation ("CDCR")

13      number; an "effective date" of June 23, 2008; an "1845 date" of December 14,

14      2015; and a "housing restrictions" comment noting "lower/bottom bunk only."

15      Id. at 12.  The second page appears to be a CDCR 7410 (08/04) form titled

16      "Comprehensive Accommodation Chrono," which is dated September 16, 2008

17      and September 17, 2008, and signed by what appears to be two separate physicians.

18      Id. at 13, 9/17/08 CDCR 7410.  The 9/17/08 CDCR 7410 form contains the

19      following instructions:

20              A physician shall complete this form if an inmate requires an

21              accommodation due to a medical condition.   Circle P if the

22              accommodation is to be permanent, or T if the accommodation is to be

23              temporary.  If the accommodation is temporary, write the date the

24              accommodation expires on the line.  A new form shall be generated

25              when a change to an accommodation is required or upon renewal of a

26              temporary accommodation.  Any new form generated shall include

27              previous accommodations, if they still apply.  Chronos indicating

28

permanent accommodations shall be reviewed annually.   This form

shall be honored as a permanent chrono at all institutions.

Id.  The 9/17/08 CDCR 7410 form designates the ground floor cell and bottom bunk limitations with a "P."  Id.  There are also notes under the medical equipment notes for a cane and particular type of shoes.  Id.

Plaintiff also attached a CDCR 7410 form with similar notations for a ground floor cell and bottom bunk designation, signed on June 23, 2008 and June 24, 2008, by what appear to be physicians.  ECF No. 46-1, 6/24/08 CDCR 7410 at 1.  This 6/24/08 CDCR 7410 form has the same instructions as the 9/17/08 CDCR 7410.  Finally, as part of Exhibit A, Plaintiff included a CDCR 7410 (10/13) form, which also designated that Plaintiff permanently be provided a bottom bunk and was "digitally authenticated" on December 14, 2015.  ECF No. 46-1, 12/14/15 CDCR 7410 at 1.

Plaintiff alleges that upon reviewing this Chrono, the sergeant ordered Hunter to allow Plaintiff to remain in Plaintiff's housing unit.  Id. at 8.

The next day, December 11, 2015, Hunter, disregarding the sergeant's orders from day before, told another sergeant, Jameson, that Plaintiff was to be moved.  Id.  Plaintiff spoke with Jameson and showed Jameson the Chrono, but Jameson responded: "'If you don't want to move, I'm throwing away your property and making you sleep outside on [sic] the yard.'"  Id. (capitalization normalized).  Plaintiff was then moved to another housing unit by Hunter and Jameson and was kept waiting in a dayroom "for at least 30 minutes before being housed."  Id. at 9.

When Plaintiff got to his new cell, another inmate said that he also had a lower bunk chrono and that Plaintiff should not have been moved to the new cell.  Id.  On December 12, 2015, Plaintiff fell from the top bunk and injured Plaintiff's left leg, back, and head.  Id.  Plaintiff alerted staff and "was dragged on the floor out of [the] cell and rushed to [a] medical . . . facility" and then "transferred to

5

1  Palmdale Medical Center." <u>Id.</u>  Plaintiff was discharged that same day, after being

2  treated for an abrasion on his left leg; he also suffered "confusion from the fall that

3  injured Plaintiff['s] lower back and leg with evidence of prior surgery." <u>Id.</u>

4       Plaintiff refers to Exhibit B to the SAC, which appear to be medical records

5  from December 14, 2015 and indicate that Plaintiff was sent to "PRMC ER on

6  12/12/15 after he fell from the top bunk that day hitting his head, back and left

7  shin." ECF No. 46-1,  12/14/15 Primary Care Provider Notes.  This note further

8  provides that "Pt states it is hard for him to go up and down the bunk w/ the

9  operated left leg." <u>Id.</u>  This note also includes what appears to be the cause of

10  Plaintiff's injuries—"motorcycle accident in 2004." <u>Id.</u>  Finally, the name of the

11  doctor who appears to have treated Plaintiff matches the name of the doctor who

12  digitally authenticated the 12/14/15 CDCR 7410.  <u>See</u> <u>id.</u>

13       Plaintiff further alleges that Plaintiff was given a "lay-in order" by the

14  medical staff as a result of his injury and prescribed "effective medication

15  (ibuprofen, motrin) on Dec[ember] 14, 2015." ECF No. 46, SAC at 10.  Plaintiff

16  alleges that he was ridiculed by the staff, while he waited for his medication, and

17  that "[a]s a direct result of the ridicule Plaintiff continued to receive, Plaintiff was

18  transferred to another level three (3) prison (California Mens Colony)." <u>Id.</u>

19  (capitalization normalized).

20       Though not referenced in the SAC, Plaintiff also provided his medical

21  records from the Palmdale Regional Medical Center regarding the medical

22  treatment Plaintiff received on December 12, 2015.  ECF No. 46-1, Exh. C at 5-9;

23  ECF No. 46-2, Exh. C at 1-10; ECF No. 46-3, Exh. C at 1-7.  Similarly, Plaintiff also

24  provided a Health Care Service Request Form, also dated December 12, 2015,

25  where Plaintiff states that "my left leg keeps going out on me and I'm having a lot

26  of sharp pain," ECF No. 46-3, Exh. D at 9 (capitalization normalized), and other

27  Health Care Services Request Forms dated January 3, 2016 and January 11, 2016.

28  ECF No. 46-4, Exh. D at 1-2.

1    Finally, Plaintiff attached the third level appeal decision from the CDCR, in

2  which the CDCR examiner denied Plaintiff's claim for relief arising from the same

3  facts alleged here.  ECF 46-4, Exh. F at 6-7.

4    In this third level appeal decision, the CDCR examiner found that when

5  Plaintiff arrived at the Lancaster facility, "the CDC Form 1882, Initial Housing

6  Review documents [provided] no housing restrictions at that time."  Id. at 7.

7  Further, the examiner found "that the CDCR 1845 dated December 14, 2015,

8  documents that [Plaintiff] has no disability; and that the CDCR 7410 dated

9  December 14, 2015[,] documents that [Plaintiff] required lower bunk housing,"

10  were acted upon when Plaintiff was moved on December 15, 2015, to a lower bunk.

11  Id.

12    Based on these allegations by Plaintiff, Plaintiff claims that Defendants were

13  deliberately indifferent, in violation of the Eighth Amendment of the U.S.

14  Constitution.  ECF No. 46, SAC at 7.  Further, as a proximate result of

15  Defendants' wrongful acts, Plaintiff claims his leg, head, and back were injured and

16  that Plaintiff is entitled to $500,000 in compensatory damages and $250,000 in

17  punitive damages.  Id. 6-7.

18    **C.    Defendants' Motion**

19    In their Motion, Defendants ask the Court to dismiss Plaintiff's FAC under

20  Fed. R. Civ. P. 12(b)(6).  ECF No. 68, Motion at 9.  In doing so, Defendants argue

21  that the Court can review the attachments to the without converting it into a

22  summary judgment motion.  Id. at 10 (citations omitted).  Defendants raise three

23  grounds for dismissal: "(1) Plaintiff fails to allege sufficient facts to support his

24  deliberate indifference claim under the Eighth Amendment; (2) Plaintiff fails to

25  establish Defendant Asuncion's personal involvement or causation in the alleged

26  violations of Plaintiff's constitutional right; and (3) Defendants are entitled to

27  qualified immunity."  Id.  Defendants also seek to have the punitive damages claim

28  stricken.  Id.

1    **D.    Plaintiff's Opposition**

2        In his Opposition, Plaintiff argues that his SAC appropriately sets forth the

3    necessary factual allegations against Hunter and Jameson for being deliberately

4    indifferent "to his medical needs when they denied his requests to be assigned to a

5    lower bunk, after being moved to an upper bunk."  ECF No. 70, Opp'n at 6.

6    Plaintiff, however, "asks the Court to dismiss Asuncion (warden) from the (SAC)

7    for failure to state[] a claim for her alleged involvement . . . ."  Id.  Plaintiff also

8    states that Jameson and Hunter "are not entitled to [a] defense of qualified

9    immunity."  Id.

10       Plaintiff points out that "he specifically showed [] Hunter and Sergeant

11   Shumaker a copy of his medical chrono for a lower bunk, issued at another

12   institution, the metal rods that were in Plaintiff's left leg from a moto[r]cycle

13   accident prior to his incarceration, and Sergeant Shumaker ordered [] Hunter to

14   keep Plaintiff housed in the same cell."  Id.  Plaintiff also points to the portion of

15   the SAC where Hunter spoke with Jameson, and Plaintiff was then moved to

16   another cell where the lower bunk was occupied by another inmate who also had a

17   lower bunk designation.  Id. at 7.

18       With respect to Hunter and Jameson, Plaintiff argues that both of these

19   defendants displayed the objective element of an Eighth Amendment violation by

20   ignoring the Chrono showing that Plaintiff was to be provided a lower bunk, and

21   that "it is obvious that Plaintiff has stated the subjective element of a federal claim

22   of deliberate indifference to a serious medical need."  Id. at 10.  With respect to

23   qualified immunity, Plaintiff argues that "any reasonable official having been told

24   by Plaintiff that he had metal rods and cannot [be] safely housed on a top bunk

25   would know that he violated the inmate's rights to be free from cruel and unusual

26   punishment."  Id. at 12.

27

28

### III.   LEGAL STANDARDS

#### A.   Motion To Dismiss Under 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted).  This does not require a pleading to include detailed factual allegations and a "'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

However, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Ebner v. Fresh, Inc., 838 F.3d 958, 963 (9th Cir. 2016) (as amended) (quoting Iqbal, 556 U.S. at 679).

To the extent a factual allegation meets this standard, a court must accept the allegation as true at the pleading stage. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011); see also Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008) (finding that courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.") (citation omitted).  Factual allegations "that

1    are merely conclusory, unwarranted deductions of fact, or unreasonable

2    inferences" do not meet the standard of facial plausibility and will not be accepted

3    as true.  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation

4    and internal quotation marks omitted).

5           The Court must also consider Plaintiff's position as a pro se litigant at the

6    pleading stage and construe the pleading liberally.  See Byrd v. Phoenix Police

7    Dep't, 885 F.3d 639, 643 (9th Cir. 2018) (finding that pro se litigant's allegations

8    were sufficient where his "use of a colloquial, shorthand phrase ma[d]e[] plain that

9    Byrd [wa]s alleging that the officers' use of force was unreasonably excessive" and

10   was "reinforced by his allegations about the resulting injuries"); see also Blaisdell

11   v. Frappiea, 729 F.3d 1237, 1241 (9th Cir. 2013) ("This rule relieves pro se litigants

12   from the strict application of procedural rules and demands that courts not hold

13   missing or inaccurate legal terminology or muddled draftsmanship against them.").

14   This means that "a pro se complaint, however inartfully pleaded, must be held to

15   less stringent standards than formal pleadings drafted by lawyers' and can only be

16   dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can

17   prove no set of facts in support of his claim which would entitle him to relief."

18   Estelle v. Gamble, 429 U.S. 97, 106 (1976); see Fed. R. Civ. P. 8(e) (stating that

19   "[p]leadings must be construed so as to do justice").

20          In analyzing a Rule 12(b)(6) motion, "the Court is generally limited to the

21   face of the complaint, materials incorporated into the complaint by reference, and

22   matters suitable for judicial notice, as well as exhibits attached to the complaint."

23   Ismail v. County of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012), aff'd, 676

24   F. App'x 690 (9th Cir. 2017) (internal citations omitted).  Further, Rule 12(d)

25   provides:

26          If, on a motion under Rule 12(b)(6) or 12(c), matters outside the

27          pleadings are presented to and not excluded by the court, the motion

28          must be treated as one for summary judgment under Rule 56.  All

1
2

parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

3
4
5
6
7
8
9
10
11
12

Finally, if the Court finds the complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Leave to amend should be granted if it appears possible for a plaintiff to correct the defects in the complaint, especially if the plaintiff is pro se. Id. at 1130-31; Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). However, if, after careful consideration, it is clear a complaint cannot be cured by amendment, a court may dismiss without leave to amend. Cato, 70 F.3d at 1107-11; see also Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002) (upholding dismissal without leave to amend where additional facts would not establish elements of claim).

13

**B.     Eighth Amendment Standard**

14
15
16
17
18
19
20
21
22
23

The Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement," including adequate medical care and protection from undue harm. Farmer v. Brennan, 511 U.S. at 825, 832 (1994). "Deliberate indifference in violation of the Eighth Amendment exists when a prison official knows an inmate faces a substantial risk of serious harm to his health and fails to take reasonable measures to abate the risk" Nicholson v. Finander, No. CV 12-9993-FMO JEM, 2014 WL 8095187, at *7 (C.D. Cal. Oct. 24, 2014), report and recommendation adopted, No. CV 12-9993-FMO(JEM), 2015 WL 1006551 (C.D. Cal. Mar. 5, 2015) (citing Farmer v. Brennan, 511 U .S. 825, 847 (1994); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir.2004)).

24
25
26
27
28

To demonstrate deliberate indifference under the Eighth Amendment, a plaintiff must allege that: (1) the deprivation, objectively, creates "a substantial risk of serious harm"; and (2) the prison official responsible for the deprivation has a "sufficiently culpable state of mind" indicating "the unnecessary and wanton infliction of pain." Farmer, 511 U.S. at 834. As such, the standard is not satisfied by

11

1   a showing of medical malpractice or mere negligence.  Toguchi v. Chung, 391 F.3d

2   1051, 1060 (9th Cir. 2004).

3        To satisfy the first prong of the deliberate indifference standard, a plaintiff

4   must demonstrate a serious medical need.  An inmate's medical need is "serious" if

5   failure to treat his or her medical condition "could result in further significant injury

6   or the 'unnecessary and wanton infliction of pain.'"  Jett v. Penner, 439 F.3d 1091,

7   1096 (9th Cir. 2006) (citation omitted).  This does not require that a plaintiff show

8   they suffered any substantial harm or significant injury because of the alleged

9   misconduct.  Id.  Nevertheless, courts still consider whether "a reasonable doctor or

10  patient would find [the prisoner's condition] important and worthy of comment or

11  treatment; the presence of a medical condition that significantly affects an

12  individual's daily activities; or the existence of chronic and substantial pain."

13  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

14  grounds by WMX Technologies. Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

15       The second prong of the deliberate indifference standard—Defendant's

16  sufficiently culpable state of mind—requires that the prison official "be aware of facts

17  from which the inference could be drawn that a substantial risk of serious harm exists,

18  and he must also draw the inference."  Farmer, 511 U.S. at 837.  This requires that a

19  plaintiff state facts showing that the official acted in purposeful disregard of excessive

20  risk.  See Toguchi, 391 F.3d at 1060.

21       **C.    Section 1983 Claim**

22       To state a claim for a civil rights violation under § 1983, a plaintiff must allege

23  that: (1) a particular defendant, (2) acting under color of state law, (3) deprived

24  plaintiff of a right guaranteed under the U.S. Constitution or a federal statute.

25  42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48 (1988).  Suits against

26  government officials under § 1983 in their individual capacities "seek to impose

27  personal liability upon a government official for actions he takes under color of state

28  law."  Kentucky v. Graham, 473 U.S. 159, 165 (1985).  "A person 'subjects' another

1   to the deprivation of a constitutional right, within the meaning of [§] 1983, if he does

2   an affirmative act, participates in another's affirmative acts, or omits to perform an

3   act which he is legally required to do that causes the deprivation of which [the

4   plaintiff complains]." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Section

5   1983 requires that plaintiffs show that a person's act or omission constituted a

6   breach of duty that proximately caused the alleged constitutional injury.  Mendez v.

7   County of Los Angeles, 897 F.3d 1067, 1074 (9th Cir. 2018).

8        For conduct to constitute an action taken "under color of law," "the

9   deprivation must be caused by the exercise of some right or privilege created by the

10  State . . . or by a person for whom the State is responsible[.]"  West, 487 U.S. at 49

11  (internal quotations omitted).

## IV.   DISCUSSION

### A.   Plaintiff's Claim Against Defendant Asuncion Are Dismissed.

14       Plaintiff consents to the dismissal of his § 1983 action against Asuncion.

15  Accordingly, the claims against Asuncion are DISMISSED.

### B.   Plaintiff's Claims Against Hunter and Jameson

#### 1.   Plaintiff's Allegations Satisfies the State Actor Elements

18       First, the Magistrate Judge finds that the current action names individuals

19  and who were acting under color of state law.  Consequently, the § 1983 turns on

20  whether the SAC the Eighth Amendment claims against Hunter and Jameson are

21  sufficient.

#### 2.   Plaintiff's Allegations Satisfies the Eighth Amendment Requirements

24       Defendants argue that SAC contains "conclusory, vague, and

25  overgeneralized language."  ECF No. 68, Mot. at 11.  Additionally, Defendants

26  argue that because the Chrono presented to Hunter and Jameson was issued over

27  eight years before the events occurred, and required annual renewal, Hunter and

28

1  Jameson cannot be held liable for ignoring a condition that could have harmed

2  Plaintiff.  Id. at 12-13.

3          Turning to the allegations in the SAC, which the Magistrate Judge must

4  accept as true and draw reasonable inferences in Plaintiff's favor, Plaintiff notified

5  Hunter and Jameson multiple times of his "medical condition" and that he had a

6  permanent lower bunk designation under the Chrono.  ECF No. 46, SAC at 8.

7  Though Plaintiff did not specify what "medical condition," later in the SAC,

8  Plaintiff refers to a "metal rod in left leg" and refers to the medical records, dated

9  after the current actions at issue by Hunter and Jameson.  Id.  Plaintiff also referred

10  to the Chrono, which he attached as Exhibit A to SAC, and which, as discussed

11  previously, was dated in 2008, noted that the bottom bunk designation was

12  permanent, but which also designated that the "Chronos indicating permanent

13  accommodations shall be reviewed annually"  ECF No. 46, SAC at 8; id. at 13,

14  9/17/08 CDCR 7410.

15          With respect to the Chrono dated in 2008, though it may be that Hunter and

16  Jameson ignored it because of the annual review requirement, at this stage it was

17  enough to put Hunter and Jameson on notice, both of whom do not appear to be

18  physicians with the authority to re-designate Plaintiff's bunk designation, that

19  Plaintiff's lower bunk designation was still applicable.  Additionally, the "medical

20  condition" notice to Hunter and Jameson along with the medical records that

21  Plaintiff had permanent medical condition with his left leg, allows for the

22  Magistrate Judge to conclude that the notice to Hunter and Jameson is not an

23  "unwarranted deduction[] of fact, or unreasonable inference[]."  See In re Gilead

24  Scis. Sec. Litig., 536 F.3d at 643.

25          This valid, though older and un-revoked, Chrono and the referenced

26  "medical condition," coupled with the statement that Jameson allegedly made to

27  Plaintiff, that Plaintiff had the option of moving or sleeping outside, are sufficient

28  to satisfy the pleading requirement at this stage to allow the matter to proceed.  See

1   Brown v. Alexander, No. 13-6143 BRO (RNB), 2014 WL 3893393 at *3 (C.D. Cal.

2   Aug. 7, 2014) ("the Ninth Circuit has held that 'a prison official acts with

3   deliberate indifference when he ignores the instructions of the prisoner's treating

4   physician'") (quoting Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir.1999));

5   ECF N. 46, SAC at 8.

6          Further, the Magistrate Judge does not find the authorities cited by

7   Defendants persuasive in this matter because they differ in materials respects from

8   the current case.  For example, in Nicholson v. Finander, No. CV 12-9993-

9   FMO(JEM), 2014 WL 1407828 (C.D. Cal. April 11, 2014), the case was based on a

10   complaint that plaintiff had against a physician for not ordering a lower bunk

11   designation and for denying certain medications.  This is a markedly different

12   situation than pleaded here where jail officials disregarded the— albeit older—

13   unrevoked Chrono and notification by Plaintiff of his "medical condition."

14   Similarly, Robinson v. Chen Ho, No. 1:15-CV-01186-MJS PC, 2015 WL 5326194

15   (E.D. Cal. Sept. 10, 2015) and Ratcliff v. Akanno, No. 1:16-CV-00584 SAB PC,

16   2016 WL 3959983 (E.D. Cal. July 22, 2016), also involved claims against medical

17   personnel for failing to appropriately prescribe medications or housing restrictions

18   and did not involve jail personnel failing to accommodate medical

19   recommendations and notifications.

20          Moreover, Defendants claim that the injury was caused because Plaintiff

21   "rushed" off the top bunk, rather than the fact that Plaintiff was placed on the top

22   bunk with Plaintiff's medical condition, is not persuasive.  ECF No. 68, Mot. at 13-

23   14.  The exact cause of the injury is properly determined at a later stage in this case

24   and not at the pleading stage as the facts alleged are sufficient to conclude that a

25   substantial risk of harm was created by requiring Plaintiff to use the top bunk.  See

26   Farmer, 511 U.S. at 837 (noting that to properly assert a deliberate indifference

27   claim, plaintiff must show that defendant was "aware of facts from which the

28

1  inference could be drawn that a substantial risk of serious harm exists, and he must

2  also draw the inference").

3              **3.      Hunter and Jameson's Qualified Immunity Claim is Denied**

4                     **Without Prejudice**

5         The Court in <u>Barker v. Hall</u>, No. CV 17-7051-SVW (PJW), 2018 WL

6  5993851, at *5 (C.D. Cal. Aug. 28, 2018), <u>report and recommendation adopted,</u> No.

7  CV 17-7051-SVW (PJW), 2018 WL 6003551 (C.D. Cal. Oct. 3, 2018), addressed

8  the issue of qualified immunity in the following manner, in a similar type of case,

9  and which this Magistrate Judge finds applicable here:

10        Though Defendants are entitled to raise qualified immunity in a motion

11        to dismiss, generally speaking, the issue is better addressed in a

12        summary judgment motion.  <u>See</u> <u>Wong v. United States</u>, 373 F.3d 952,

13        956-57 (9th Cir. 2004) (explaining qualified immunity is better left for

14        summary judgment because the notice pleading standard may force

15        courts to decide "far-reaching constitutional questions on a nonexistent

16        factual record").

17

18        As in <u>Barker</u>, there are factual questions regarding this matter that

19  must be more fully developed before the Court can properly address the

20  issue of whether the defense of qualified immunity is applicable.  The major

21  factual and legal issue, which neither party addresses, is whether a Chrono

22  that sets out a permanent restriction is automatically invalid if the annual

23  review is not conducted.  Additionally, there are factual issues that are better

24  addressed at the summary judgment stage regarding the extent of Plaintiff's

25  ability to be housed in a top bunk.

26        Consequently, this defense is DENIED, WITHOUT PREJUDICE.

27

28

#### 4.    Defendants' Motion to Strike Is Denied

Finally, Defendants seek to strike the punitive damages claim.  Again, as in Barker, there are sufficient facts alleged here to allow facts to be developed whether Hunter and Jameson were sufficiently reckless or callous based on Plaintiff's claims that Hunter moved Plaintiff even though another sergeant, when presented the same information decided against placing Plaintiff is a top bunk.  Additionally, the allegations that Jameson may or may not have known about what another sergeant decided, and why Jameson decided to act differently, allows for this allegation to survive at this point.  Therefore, this request is DENIED.

### V.    RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the Court:

(1)    ADOPT the findings in this Report or Recommendation;

(2)    GRANT IN PART and DENY IN PART Defendants' Motion [ECF No. 68];

(3)    DISMISS Plaintiff's Claims against Defendant Asuncion;

(4)    DENY Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim and to strike Plaintiff's punitive damages claim; and

(5)    DENY, WITHOUT PREJUDICE, Defendants' Motion based on qualified immunity.

DATED:  March 26, 2020

HON. SHASHI H. KEWALRAMANI
United States Magistrate Judge

### NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket

17

1   number.  No Notice of Appeal pursuant to the Federal Rules of Appellate

2   Procedure should be filed until entry of the Judgment of the District Court.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28