1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

10
11

KHAALIQ BINNS,

12
13

Plaintiff,

14
15

v.

D. ASUNCION, ET AL.,

Defendants.

Case No. 2:16-cv-05481-DSF-SHK

**AMENDED REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS**

16
17    This Amended Report and Recommendation ("R&R") is submitted to the
18  Honorable Dale S. Fischer, United States District Judge, under 28 U.S.C. § 636 and
19  General Order 05-07 of the United States District Court for the Central District of
20  California.  For the reasons set forth below, the Magistrate Judge recommends that
21  Defendants' Motion to Dismiss be GRANTED IN PART and DENIED IN PART.

22            **I.    SUMMARY OF RECOMMENDATION**

23    On September 11, 2017, Plaintiff Khaaliq Binns ("Plaintiff"), proceeding pro
24  se and in forma pauperis ("IFP"), constructively filed[1] his Second Amended
25  Complaint ("SAC") naming as defendants Warden D. Asuncion ("Asuncion"),

26
27  ---
[1] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to
28  court, the court deems the pleading constructively "filed" on the date it is signed.  Douglas v.
Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (applying the mailbox rule to civil rights suits filed by
pro se prisoners).

1  Correctional Officer Hunter ("Hunter"), and Correctional Officer (Sergeant)

2  Jameson ("Jameson") (collectively "Defendants").  Electronic Case Filing

3  Number ("ECF No.") 46, SAC at 3.  Plaintiff brought this case under 42 U.S.C.

4  § 1983 ("§ 1983") against Defendants in their individual capacities.  Id.  On August

5  19, 2019, Defendants filed a Motion to Dismiss ("Motion" or "Mot."), under Fed.

6  R. Civ. P. 12(b)(6).  ECF No. 68, Mot.  On September 24, 2019, Plaintiff filed an

7  Opposition to the Motion ("Opposition" or "Opp'n").  ECF No. 70, Opp'n.

8       For the reasons described below, the Magistrate Judge recommends that the

9  District Judge GRANT IN PART and DENY IN PART Defendants' Motion.

10  Specifically, the Magistrate Judge recommends that the District Judge: (1) GRANT

11  the Motion as to Defendant Asuncion and DISMISS Plaintiff's claims against

12  Defendant Asuncion; (2) DENY the Motion as to Plaintiff's claim that Defendants

13  Hunter and Jameson violated Plaintiff's Eighth Amendment rights; (3) DENY the

14  Motion to strike the punitive damages claim; and (4) DENY Defendants' Motion

15  to dismiss Plaintiff's claim based on qualified immunity.

16  **II.     BACKGROUND**

17      **A.     <u>Procedural History</u>**

18       On July 11, 2016, Plaintiff constructively filed a § 1983 Complaint arising

19  from Plaintiff's improper assignment to an upper bunk in a state jail facility.  ECF

20  No. 1, Complaint.  Plaintiff alleged that Defendants knowingly and improperly

21  assigned Plaintiff to an upper bunk even though Defendants were aware that

22  Plaintiff was required to be given a lower bunk as a result of Plaintiff's medical

23  condition.  Id. at 3, 5.  Plaintiff claimed these actions violated the Eighth

24  Amendment of the U.S. Constitution, and Plaintiff sued those Defendants in their

25  individual and official capacities.  See id.  After screening the Complaint, the

26  previously assigned Magistrate Judge found that the Complaint sufficiently alleged

27  claims under the Eighth and Fourteenth Amendments against two defendants in

28

their individual capacities and ordered Plaintiff to provide the necessary information to serve those two defendants.  ECF No. 7, Order Authorizing Service.

On November 8, 2016, Plaintiff constructively filed a First Amended Complaint ("FAC") naming several new defendants, but based on the same claim of improper placement of Plaintiff in an upper bunk in violation of Plaintiff's Eighth Amendment rights.  See ECF No. 19, FAC.  The FAC also named as defendants "unknown medical staff" who allegedly allowed for Plaintiff's placement despite medical documentation showing Plaintiff needed a lower bunk.  Id. at 4.  On December 15, 2016, the previously assigned Magistrate Judge allowed the FAC to be served on three Defendants in their individual capacities.  ECF No. 22, Order Allowing Service of FAC.

On May 1, 2017, the Court issued a R&R dismissing the matter, without prejudice, for Plaintiff's failure to provide the necessary service related documents and, as a result, failing to prosecute the matter.  ECF No. 27, R&R re: Failure to Prosecute.  On May 11, 2017, Plaintiff filed a request for an extension of time to provide the necessary materials, which the Court granted, and withdrew the R&R re: Failure to Prosecute.  ECF Nos. 29, 30.

Subsequently, Plaintiff provided materials to have the FAC served on Defendants and several Defendants provided waivers of service.  ECF No. 38, Waiver of Service.  On August 17, 2017, several Defendants filed a motion to dismiss the FAC.  ECF Nos. 41, 42.  Plaintiff then filed a motion for leave to amend the FAC, which the Court granted, and Plaintiff filed a Second Amended Complaint ("SAC").  ECF Nos. 44-46.  The SAC is the controlling pleading.

On March 18, 2018, Plaintiff filed a request for a settlement conference, which, after the Court ordered a response, Defendants opposed.  ECF Nos. 51-53. The matter was subsequently referred for a settlement conference and a notice was filed indicating that the parties did not settle the matter.  ECF Nos. 60, 64.

/ / /

On August 29, 2019, Defendants filed the current Motion and, on September 24, 2019, Plaintiff filed an Opposition. ECF Nos. 68, 70. The matter stands ready for decision.

**B.   Summary Of The SAC**

Plaintiff makes factual allegations in the SAC and also attaches various exhibits. With respect to these exhibits, Plaintiff refers to some, but not all, of them throughout the SAC. For purposes of this Motion, the Court accepts as true the factual allegations in the SAC and the appropriate exhibits and, construing them in the light most favorable to Plaintiff, they are as follows.

Plaintiff is injured and has a metal rod in his left leg. ECF No. 46, SAC at 8. On December 10, 2015, while Plaintiff was housed at Lancaster State Prison, Defendant "Hunter attempted to move Plaintiff from" Plaintiff's bottom bunk to an upper bunk in another cell. Id. In response, Plaintiff presented Defendant Hunter and another sergeant with a "certified copy of Plaintiff's Chronos," which Plaintiff attaches as Exhibit A to the SAC. Plaintiff claims that this "Chronos" requires that Plaintiff be placed in a bottom bunk. Id.

Specifically, the first page of Exhibit A to the SAC is a document with Plaintiff's name and California Department of Correction and Rehabilitation ("CDCR") number. Id. at 12. This page also includes a notation of an "effective date" of June 23, 2008, an "1845 date" of December 14, 2015, and a "housing restrictions" comment noting "lower/bottom bunk only." Id.

The second page appears to be a CDCR 7410 (08/04) form titled "Comprehensive Accommodation Chrono," which is dated September 16, 2008, and September 17, 2008, and is signed by, what appears to be, two separate physicians. Id. at 13, 9/17/08 CDCR 7410. The 9/17/08 CDCR 7410 form contains the following instructions:

> A physician shall complete this form if an inmate requires an
> accommodation due to a medical condition. Circle P if the

accommodation is to be permanent, or T if the accommodation is to be temporary.  If the accommodation is temporary, write the date the accommodation expires on the line.  A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation.  Any new form generated shall include previous accommodations, if they still apply.  Chronos indicating permanent accommodations shall be reviewed annually.  This form shall be honored as a permanent chrono at all institutions.

Id. As it relates to Plaintiff's cell location and bunk designation, the 9/17/08 CDCR 7410 form designates the ground floor cell and bottom bunk limitations with a "P" – indicating that this is a permanent accommodation.  Id.  There are also notes under the medical equipment notes for a cane and particular type of shoes for Plaintiff.  Id.

Plaintiff also attaches a CDCR 7410 form with similar notations for a ground floor cell and bottom bunk designation, signed on June 23, 2008, and June 24, 2008, by what appear to be physicians.  ECF No. 46-1, 6/24/08 CDCR 7410 at 1. This 6/24/08 CDCR 7410 form includes the same instructions as the 9/17/08 CDCR 7410.  See id.  Finally, as part of Exhibit A, Plaintiff includes a CDCR 7410 (10/13) form, which also designated that Plaintiff permanently be provided a bottom bunk and was "digitally authenticated" on December 14, 2015.  ECF No. 46-1, 12/14/15 CDCR 7410 at 1.

Plaintiff alleges that, on December 10, 2015, upon reviewing this Chrono requiring Plaintiff to be provided a bottom bunk, a sergeant told Defendant Hunter to allow Plaintiff to remain in Plaintiff's housing unit in the bottom bunk.  ECF No. 46, SAC at 8.

Plaintiff alleges that the next day, December 11, 2015, Defendant Hunter, disregarding the sergeant's orders, told another sergeant, Defendant Jameson, that Plaintiff was to be moved to another unit and an upper bunk.  Id.  Plaintiff spoke

5

with Defendant Jameson and showed Defendant Jameson the Chrono requiring a bottom bunk designation, but Defendant Jameson responded: "'If you don't want to move, I'm throwing away your property and making you sleep outside on [sic] the yard.'"  Id. (capitalization normalized).  Plaintiff was then moved to another housing unit by Defendants Hunter and Jameson and kept waiting in a dayroom "for at least 30 minutes before being housed."  Id. at 9.

When Plaintiff got to his new cell, another inmate said that he also had a bottom bunk chrono and that Plaintiff should not have been moved to the new cell. Id.  On December 12, 2015, Plaintiff fell from the upper bunk and injured Plaintiff's left leg, back, and head.  Id.  Plaintiff alerted staff and "was dragged on the floor out of [the] cell and rushed to [a] medical . . . facility" and then "transferred to Palmdale Medical Center."  Id.  Plaintiff was discharged that same day, after being treated for an abrasion on his left leg.  Id.  Plaintiff also suffered "confusion from the fall that injured Plaintiff['s] lower back and leg with evidence of prior surgery." Id.

Plaintiff refers to medical records from December 14, 2015, which Plaintiff attaches as Exhibit B to the SAC.  These medical records state that Plaintiff was sent to "PRMC ER on 12/12/15 after he fell from the top bunk that day hitting his head, back and left shin."  ECF No. 46-1, 12/14/15 Primary Care Provider Notes. This note further provides that "Pt states it is hard for him to go up and down the bunk w/ the operated left leg" and also includes what appears to be the cause of Plaintiff's injuries warranting a bottom bunk designation—"motorcycle accident in 2004."  Id.  Finally, the name of the doctor who appears to have treated Plaintiff matches the name of the doctor who digitally authenticated the 12/14/15 CDCR 7410, which designated that Plaintiff be provided a bottom bunk.  See id.

Plaintiff further alleges that Plaintiff was given a "lay-in order" by the medical staff as a result of his injury and prescribed "effective medication (ibuprofen, motrin) on Dec[ember] 14, 2015."  ECF No. 46, SAC at 10.  Plaintiff

1   alleges that he was ridiculed by the staff, while he waited for his medication, and

2   that "[a]s a direct result of the ridicule Plaintiff continued to receive, Plaintiff was

3   transferred to another level three (3) prison (California Mens Colony)."  Id.

4   (capitalization normalized).

5          Though not referenced in the SAC, Plaintiff also provides his medical

6   records from the Palmdale Regional Medical Center regarding the medical

7   treatment Plaintiff received on December 12, 2015.  ECF No. 46-1, Exh. C at 5-9;

8   ECF No. 46-2, Exh. C at 1-10; ECF No. 46-3, Exh. C at 1-7.  Similarly, Plaintiff also

9   provides a Health Care Service Request Form, also dated December 12, 2015,

10  where Plaintiff states that "my left leg keeps going out on me and I'm having a lot

11  of sharp pain."  ECF No. 46-3, Exh. D at 9 (capitalization normalized).  Plaintiff

12  also attaches other Health Care Services Request Forms dated January 3, 2016, and

13  January 11, 2016.  ECF No. 46-4, Exh. D at 1-2.

14         Finally, Plaintiff attaches the third level appeal decision from the CDCR, in

15  which the CDCR examiner denied Plaintiff's claim for relief arising from the same

16  facts alleged here.  ECF No. 46-4, Exh. F at 6-7.

17         In this third level appeal decision, the CDCR examiner found that when

18  Plaintiff arrived at the Lancaster facility, "the CDC Form 1882, Initial Housing

19  Review documents [provided] no housing restrictions at that time."  Id. at 7.

20  Further, the examiner found "that the CDCR 1845 dated December 14, 2015,

21  documents that [Plaintiff] has no disability[,] and that the CDCR 7410 dated

22  December 14, 2015[,] documents that [Plaintiff] required lower bunk housing[.]"

23  Id.  The examiner found that these recommendations were followed when Plaintiff

24  was moved, on December 15, 2015, to a lower bunk.  Id.

25         Based on these allegations by Plaintiff, Plaintiff claims that Defendants were

26  deliberately indifferent, in violation of the Eighth Amendment, by improperly

27  placing Plaintiff in an upper bunk.  ECF No. 46, SAC at 7.  Further, as a proximate

28  result of Defendants' wrongful acts, Plaintiff claims his leg, head, and back were

1  injured and that Plaintiff is entitled to $500,000 in compensatory damages and
2  $250,000 in punitive damages.  Id. 6-7.

3      **C.    Defendants' Motion**

4      In their Motion, Defendants ask the Court to dismiss Plaintiff's SAC under
5  Fed. R. Civ. P. 12(b)(6).  ECF No. 68, Motion at 9.  In doing so, Defendants argue
6  that the Court can review the attachments to the SAC without converting it into a
7  summary judgment motion.  Id. at 10 (citations omitted).  Defendants raise three
8  grounds for dismissal: "(1) Plaintiff fails to allege sufficient facts to support his
9  deliberate indifference claim under the Eighth Amendment; (2) Plaintiff fails to
10  establish Defendant Asuncion's personal involvement or causation in the alleged
11  violations of Plaintiff's constitutional right; and (3) Defendants are entitled to
12  qualified immunity."  Id.  Defendants also seek to have the punitive damages claim
13  stricken.  Id.

14      **D.    Plaintiff's Opposition**

15      In his Opposition, Plaintiff argues that his SAC appropriately sets forth the
16  necessary factual allegations against Defendants Hunter and Jameson to show they
17  were deliberately indifferent "to his medical needs when they denied his requests
18  to be assigned to a lower bunk, after being moved to an upper bunk."  ECF No. 70,
19  Opp'n at 6.  Plaintiff, however, "asks the Court to dismiss Asuncion (warden) from
20  the (SAC) for failure to state[] a claim for her alleged involvement . . . ."  Id.
21  Plaintiff also states that Defendants Jameson and Hunter "are not entitled to [a]
22  defense of qualified immunity."  Id.

23      Plaintiff points out that "he specifically showed [] Hunter and Sergeant
24  Shumaker a copy of his medical chrono for a lower bunk, issued at another
25  institution, the metal rods that were in Plaintiff's left leg from a moto[r]cycle
26  accident prior to his incarceration, and [that] Sergeant Shumaker ordered [] Hunter
27  to keep Plaintiff housed in the same cell."  Id.  Plaintiff also points to the portion of
28  the SAC where Defendant Hunter spoke with Defendant Jameson, and Plaintiff

8

1  was then moved to another cell where the lower bunk was occupied by another
2  inmate who also had a lower bunk designation.  Id. at 7.

3  　　　With respect to Defendants Hunter and Jameson, Plaintiff argues that both
4  of these defendants displayed the objective element of an Eighth Amendment
5  violation by ignoring the Chrono showing that Plaintiff was to be provided a lower
6  bunk.  See id. at 10.  With respect to the second element, Plaintiff argues that "it is
7  obvious that Plaintiff has stated the subjective element of a federal claim of
8  deliberate indifference to a serious medical need."  Id.  With respect to qualified
9  immunity, Plaintiff argues that "any reasonable official having been told by Plaintiff
10  that he had metal rods and cannot [be] safely housed on a top bunk would know
11  that he violated the inmate's rights to be free from cruel and unusual punishment."
12  Id. at 12.

13  　　　　　　　　　　**III.   LEGAL STANDARDS**
14  　　　**A.   Motion To Dismiss Under 12(b)(6)**

15  　　　Under Rule 12(b)(6), a defendant may move to dismiss an action for failure
16  to allege "enough facts to state a claim to relief that is plausible on its face." Bell
17  Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible on its face
18  "when the plaintiff pleads factual content that allows the court to draw the
19  reasonable inference that the defendant is liable for the misconduct alleged.  The
20  plausibility standard is not akin to a 'probability requirement,' but it asks for more
21  than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal,
22  556 U.S. 662, 678 (2009) (internal citations omitted).  This does not require a
23  pleading to include detailed factual allegations and a "'claim has facial plausibility
24  when the plaintiff pleads factual content that allows the court to draw the
25  reasonable inference that the defendant is liable for the misconduct alleged.'"
26  Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Iqbal, 556 U.S. at
27  678).
28  / / /

1   However, the complaint "must contain sufficient allegations of underlying

2 facts to give fair notice and to enable the opposing party to defend itself

3 effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). "Determining

4 whether a complaint states a plausible claim for relief is 'a context-specific task that

5 requires the reviewing court to draw on its judicial experience and common

6 sense.'" Ebner v. Fresh, Inc., 838 F.3d 958, 963 (9th Cir. 2016) (as amended)

7 (quoting Iqbal, 556 U.S. at 679).

8   To the extent a factual allegation meets this standard, a court must accept

9 the allegation as true at the pleading stage. Hamilton v. Brown, 630 F.3d 889,

10 892-93 (9th Cir. 2011); see also Manzarek v. St. Paul Fire & Marine Ins. Co., 519

11 F.3d 1025, 1031 (9th Cir. 2008) (finding that courts must "accept factual

12 allegations in the complaint as true and construe the pleadings in the light most

13 favorable to the nonmoving party.") (citation omitted). Factual allegations "that

14 are merely conclusory, unwarranted deductions of fact, or unreasonable

15 inferences" do not meet the standard of facial plausibility and will not be accepted

16 as true. In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation

17 and internal quotation marks omitted).

18   The Court must also consider Plaintiff's position as a pro se litigant at the

19 pleading stage and construe the pleading liberally. See Byrd v. Phoenix Police

20 Dep't, 885 F.3d 639, 643 (9th Cir. 2018) (finding that pro se litigant's allegations

21 were sufficient where his "use of a colloquial, shorthand phrase ma[d]e[] plain that

22 Byrd [wa]s alleging that the officers' use of force was unreasonably excessive" and

23 was "reinforced by his allegations about the resulting injuries"); see also Blaisdell

24 v. Frappiea, 729 F.3d 1237, 1241 (9th Cir. 2013) ("This rule relieves pro se litigants

25 from the strict application of procedural rules and demands that courts not hold

26 missing or inaccurate legal terminology or muddled draftsmanship against them.").

27 This means that "a pro se complaint, however inartfully pleaded, must be held to

28 less stringent standards than formal pleadings drafted by lawyers' and can only be

dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976); see Fed. R. Civ. P. 8(e) (stating that "[p]leadings must be construed so as to do justice").

In analyzing a Rule 12(b)(6) motion, "the Court is generally limited to the face of the complaint, materials incorporated into the complaint by reference, and matters suitable for judicial notice, as well as exhibits attached to the complaint." Ismail v. County of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012), aff'd, 676 F. App'x 690 (9th Cir. 2017) (internal citations omitted).  Further, Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Finally, if the Court finds the complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000).  Leave to amend should be granted if it appears possible for a plaintiff to correct the defects in the complaint, especially if the plaintiff is pro se.  Id. at 1130-31; Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).  However, if, after careful consideration, it is clear a complaint cannot be cured by amendment, a court may dismiss without leave to amend.  Cato, 70 F.3d at 1107-11; see also Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002) (upholding dismissal without leave to amend where additional facts would not establish elements of claim).

### B.   Eighth Amendment Standard

The Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement," including adequate medical care and

11

1   protection from undue harm.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).

2   "Deliberate indifference in violation of the Eighth Amendment exists when a

3   prison official knows an inmate faces a substantial risk of serious harm to his health

4   and fails to take reasonable measures to abate the risk" Nicholson v. Finander, No.

5   CV 12-9993-FMO (JEM), 2014 WL 8095187, at *7 (C.D. Cal. Oct. 24, 2014),

6   report and recommendation adopted, No. CV 12-9993-FMO(JEM), 2015 WL

7   1006551 (C.D. Cal. Mar. 5, 2015) (citing Farmer, 511 U.S. at 847); Toguchi v.

8   Chung, 391 F.3d 1051, 1058 (9th Cir.2004)).

9        To demonstrate deliberate indifference under the Eighth Amendment, a

10   plaintiff must allege that: (1) the deprivation, objectively, creates "a substantial risk of

11   serious harm"; and (2) the prison official responsible for the deprivation has a

12   "sufficiently culpable state of mind" indicating "the unnecessary and wanton

13   infliction of pain." Farmer, 511 U.S. at 834.  As such, the standard is not satisfied by

14   a showing of medical malpractice or mere negligence.  Toguchi, 391 F.3d at 1060.

15        To satisfy the first prong of the deliberate indifference standard, a plaintiff

16   must demonstrate a serious medical need.  An inmate's medical need is serious if

17   failure to treat his or her medical condition "could result in further significant injury

18   or the 'unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d 1091,

19   1096 (9th Cir. 2006) (citation omitted).  This does not require that a plaintiff show

20   they suffered any substantial harm or significant injury because of the alleged

21   misconduct.  Id.  Nevertheless, courts still consider whether "a reasonable doctor or

22   patient would find [the prisoner's condition] important and worthy of comment or

23   treatment; the presence of a medical condition that significantly affects an

24   individual's daily activities; or the existence of chronic and substantial pain."

25   McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

26   grounds by WMX Technologies. Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

27        The second prong of the deliberate indifference standard—Defendant's

28   sufficiently culpable state of mind—requires that the prison official "be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.  This requires that a plaintiff state facts showing that the official acted in purposeful disregard of excessive risk.  <u>See</u> <u>Toguchi</u>, 391 F.3d at 1060.

       **C.**    **Section 1983 Claim**

       To state a claim for a civil rights violation under § 1983, a plaintiff must allege that: (1) a particular defendant, (2) acting under color of state law, (3) deprived plaintiff of a right guaranteed under the U.S. Constitution or a federal statute. 42 U.S.C. § 1983; <u>see</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  Suits against government officials under § 1983 in their individual capacities "seek to impose personal liability upon a government official for actions he takes under color of state law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of [§] 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).  Section 1983 requires that plaintiffs show that a person's act or omission constituted a breach of duty that proximately caused the alleged constitutional injury.  <u>Mendez v. County of Los Angeles</u>, 897 F.3d 1067, 1074 (9th Cir. 2018).

       For conduct to constitute an action taken "under color of law," "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible[.]" <u>West</u>, 487 U.S. at 49 (internal quotations omitted).

## IV.   DISCUSSION

### A.   <u>Plaintiff's Claim Against Defendant Asuncion Is Dismissed.</u>

       Plaintiff consents to the dismissal of his § 1983 action against Asuncion. Accordingly, the Magistrate Judge recommends that the District Judge DISMISS the claims against Defendant Asuncion.

**B.**   **Plaintiff's Claim Against Defendants Hunter And Jameson**

    **1.**   **Plaintiff's Allegations Should Be Found To Satisfy The State Actor Element.**

First, the Magistrate Judge recommends that the District Judge find that the current action names individuals who were acting under color of state law because both Defendants Hunter and Jameson were acting as officials within the CDCR when they moved Plaintiff to an upper bunk.  Consequently, the next step is whether the factual allegations in the SAC sufficiently allege an Eighth Amendment violation against Defendants Hunter and Jameson.

    **2.**   **Plaintiff's Allegations Should Be Found To Satisfy The Eighth Amendment Requirements.**

Defendants argue that the SAC contains "conclusory, vague, and overgeneralized language."  ECF No. 68, Mot. at 11.  Additionally, Defendants argue that the Chrono did not provide Defendants Hunter and Jameson with sufficient notice to prevent them from moving Plaintiff to an upper bunk, in another cell.  Id. at 12-13.  This is because the Chrono presented to Defendants Hunter and Jameson by Plaintiff showing that Plaintiff required a bottom bunk was issued over eight years before the events occurred and was of questionable validity because it had not been annually renewed, as was required by the form.  Id. at 12-13.

Turning to the allegations in the SAC, which the Magistrate Judge must accept as true and from which must the Magistrate Judge must draw reasonable inferences in Plaintiff's favor, Plaintiff notified Defendants Hunter and Jameson multiple times of his "medical condition" and that he had a permanent bottom bunk designation under the Chrono.  ECF No. 46, SAC at 8.  Though Plaintiff did not specify what "medical condition" warranted a bottom designation, the Magistrate Judge can reasonably infer that it was the disability caused by the "metal rod in [Plaintiff's] left leg."  Id.
/ / /

Plaintiff also referred to the Chrono, attached as Exhibit A to the SAC.  This Chrono, as discussed previously, was dated in 2008 and noted that Plaintiff's bottom bunk designation was permanent, but which also designated that the "Chronos indicating permanent accommodations shall be reviewed annually" ECF No. 46, SAC at 8; id. at 13, 9/17/08 CDCR 7410.

Although it may be that Defendants Hunter and Jameson ignored the Chrono because of the annual review requirement, the 2008 Chrono, when coupled with the allegation that Plaintiff told both Defendants about his leg-related medical condition, was enough to put Defendants Hunter and Jameson on notice that placing Plaintiff in an upper bunk from which he would have to climb up and down "could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  Jett, 439 F.3d at 1096.  Additionally, the allegations regarding the notice Plaintiff provided to Defendants Hunter and Jameson allows for the Magistrate Judge to conclude that the notice to Defendant Hunter and Jameson was such that an "inference could be drawn that a substantial risk of serious harm exist[ed]," Farmer, 511 U.S. at 837, by placing Plaintiff in an upper bunk.

Consequently, this is enough to meet the two-pronged pleading requirement to state an Eighth Amendment violation.  See also Brown v. Alexander, No. 13-6143 BRO (RNB), 2014 WL 3893393 at *3 (C.D. Cal. Aug. 7, 2014) ("the Ninth Circuit has held that 'a prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician[.]'") (quoting Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999)); ECF No. 46, SAC at 8.

Further, the Magistrate Judge does not find the authorities cited by Defendants persuasive in this matter because they differ in material respects from the current case.  For example, in Nicholson, No. CV 12-9993-FMO (JEM), 2014 WL 1407828, the case was based on a complaint against a plaintiff's physician for not ordering a lower bunk designation and for denying certain medications.  That was a materially different situation than the current case, where non-medically

1  trained jail officials disregarded the—albeit older—unrevoked medical order in the
2  Chrono and notification by Plaintiff of his medical condition.

3       Similarly, the other cases cited by Defendants, <u>Robinson v. Chen Ho</u>, No.
4  1:15-CV-01186-MJS PC, 2015 WL 5326194 (E.D. Cal. Sept. 10, 2015) and <u>Ratcliff</u>
5  <u>v. Akanno</u>, No. 1:16-CV-00584 SAB PC, 2016 WL 3959983 (E.D. Cal. July 22,
6  2016), also involved claims against medical personnel for failing to appropriately
7  prescribe medications or housing restrictions.  Those cases did not involve non-
8  medically trained jail personnel and their alleged failure to accommodate medical
9  recommendations and information provided by a plaintiff consistent with the
10  medical recommendations.

11       Defendants claim that the injury was caused because Plaintiff "rushed" off
12  the top bunk, rather than the fact that Plaintiff was placed on the top bunk with
13  Plaintiff's medical condition, is also not persuasive.  <u>See</u> ECF No. 68, Mot. at 13-
14  14.  Though it may be determined at a later stage that Plaintiff's medical condition
15  did not contribute to the cause of the injury, this is not the appropriate juncture to
16  make such a determination.  At this point, the SAC meets the requirement that
17  Plaintiff alleges the necessary facts to establish that Defendants created "a
18  substantial risk of serious harm" and did so with a "sufficiently culpable state of
19  mind."  <u>See</u> <u>Farmer</u>, 511 U.S. at 834 (noting that to properly assert a deliberate
20  indifference claim, plaintiff must show that defendant was "aware of facts from
21  which the inference could be drawn that a substantial risk of serious harm exists,
22  and he must also draw the inference").

23       Therefore, the Magistrate Judge recommends that the Motion be DENIED
24  as to the sufficiency of the Eighth Amendment allegations.

25       **3.       Defendants Hunter And Jameson's Qualified Immunity**
26              **Defense Should Be Denied.**

27       "In determining whether an officer is entitled to qualified immunity, we
28  consider (1) whether there has been a violation of a constitutional right; and (2)

whether that right was clearly established at the time of the officer's alleged
misconduct." Lal v. California, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing Pearson
v. Callahan, 555 U.S. 223, 232 (2009)).

Defendants first argue that they did not violate Plaintiff's constitutional
rights. ECF No. 68, Motion at 18. Defendants then argue that they "would not
have known that their conduct was unlawful when Plaintiff failed to present a valid
medical chrono requiring Plaintiff to be housed on a low bunk, which was not in
CSP-LAC's Strategic Offender Management System (SOMS) on December 11,
2015." Id. Consequently, Defendants argue, under either prong, qualified
immunity applies to the allegations made in the SAC.

For the reasons discussed previously, the Magistrate Judge believes that the
SAC contains sufficient facts to allege that there has been a violation of Plaintiff's
Eighth Amendment right. Consequently, the Magistrate Judge turns to the second
prong and whether Plaintiff's right to not be placed on an upper bunk because of a
valid medical condition was clearly established.

By 2015, "it had long been clear that the Eighth Amendment prohibits
prison officials from acting with deliberate indifference to an excessive risk of harm
to a prisoner's safety or health." McDonald v. Yates, No. 1:09-CV-00730-LJO,
2012 WL 6514658, at *9 (E.D. Cal. Dec. 13, 2012), Report and Recommendation
adopted, No. 1:09-CV-00730-LJO, 2013 WL 238904 (E.D. Cal. Jan. 22, 2013)
(citing Farmer, 511 U.S. at 834). This is also true in the context of an official
improperly placing an injured inmate in an upper bunk such that the inmate would
be at risk from being required to get up and down from an upper bunk. See id.

Defendants' argument that the lack of a valid Chrono requiring Plaintiff be
placed in a lower bunk warrants application of qualified immunity because
Plaintiff's Eighth Amendment right was not clearly established under such
circumstances is also not persuasive. This is because the Magistrate Judge finds
that this description focuses too narrowly on the type of notice that must be

provided regarding an inmate's medical condition to show a clearly established right.  Specifically, the case law only requires that appropriate notice be provided of a medical condition that would pose a risk to an inmate being placed in an upper bunk and does not limit such notice to a valid Chrono.

For example, in McDonald v. Yates, which the Magistrate Judge finds persuasive, the district court addressed the qualified immunity defense in evaluating a case where an inmate was improperly placed in an upper bunk and there was a dispute whether there was a valid chrono requiring a lower bunk designation.  No. 1:09–cv–00730–LJO–SKO PC, 2012 WL 6514658, at *6 (E.D. Cal. Dec. 13, 2012), Report and Recommendation adopted, No. 1:09-CV-00730-LJO-SKO PC, 2013 WL 238904 (E.D. Cal. Jan. 22, 2013).  The court stated that even if there was not valid chrono in place, "[d]efendants [are] required to take reasonable action once they [are] placed on notice that [p]laintiff [has] a medical condition which require[s] a lower bunk."  Id. (citing, among other cases, Farmer, 511 U.S. at 847).

Further, in the context of a claim of qualified immunity, "the law was sufficiently clear that a reasonable officer, once placed on notice as to the existence of a medical issue precluding upper bunk/upper tier housing, would have known that he was required to take reasonable measures to abate the risk of harm[.]"  Id. at *9; see also Arellano v. Hodge, No. 14-CV-590 JLS (JLB), 2020 WL 1934056, at *3 (S.D. Cal. Apr. 22, 2020) (accepting a Magistrate Judge's recommendation to deny summary judgment based on qualified immunity because, in a claim of improperly being placed in an upper bunk, "[a] reasonable jury could also find that [the defendant] enforced the housing move and ignored Plaintiff's protestations, rather than verifying the veracity of Plaintiff's [medical] claims, in conscious disregard to Plaintiff's serious medical need" and this was a clearly established right) (citing Akhtar v. Mesa, 698 F.3d 1202, 1213–14 (9th Cir. 2012)); Barker v. Hall, No. CV 17-7051-SVW (PJW), 2018 WL 5993851, at *5 (C.D. Cal. Aug. 28,

2018), Report and Recommendation adopted, No. CV 17-7051-SVW (PJW), 2018 WL 6003551 (C.D. Cal. Oct. 3, 2018) (denying defendants' motion to dismiss based on qualified immunity arising from allegedly improper placement in upper bunk because plaintiff had alleged knee problems warranting a lower bunk designation and there were many outstanding questions, including "the extent of Plaintiff's knee impairment and the amount of pain he suffered from climbing up to and down from the upper bunk").

The same analysis is applicable here. As in McDonald v. Yates, Defendants Hunter and Jameson were placed on notice of the danger Plaintiff would face if Plaintiff was required to ascend and descend from an upper bunk for, at least, the following reasons: Plaintiff had told Defendant Hunter about his medical condition with his leg, i.e. a metal in rod in Plaintiff's left leg, ECF No. 46, SAC at 8; Defendants Hunter and Jameson were shown an older, and potentially expired, medical Chrono indicating that Plaintiff's lower bunk designation was permanent and which, at least somewhat, gave credence to Plaintiff's claim of being sufficiently disabled, id.; Defendant Hunter had been instructed by another sergeant, relying on the same information, to not move Plaintiff to an upper bunk in a different cell the day before Plaintiff was moved, id.; Plaintiff was already in a lower bunk, id.; and, Plaintiff spoke with Defendant Jameson prior to being moved to an upper bunk and, inferentially, told Defendant Jameson about Plaintiff's physical limitations, id.

Therefore, the SAC contains sufficient allegations to show that Defendants Hunter and Jameson violated Plaintiff's clearly established constitutional right. Though Defendants may provide other facts that show qualified immunity should apply at a later stage, such as a summary judgement, at this pleading stage, Plaintiff's allegations meet the threshold requirements to overcome this claim. See Wong v. United States, 373 F.3d 952, 956-57 (9th Cir. 2004) (explaining qualified immunity is better left for summary judgment because the notice pleading standard

may force courts to decide "far-reaching constitutional questions on a nonexistent factual record[.]").

Consequently, the Magistrate Judge recommends that the District Judge DENY this defense, at this time.

### 4.    Defendants' Motion To Strike The Punitive Damages Claim Should Be Denied.

Finally, Defendants seek to strike Plaintiff's punitive damages claim.

Plaintiff alleges sufficient facts in the SAC to allow the record to be developed to determine whether Defendants Hunter and Jameson were sufficiently reckless or callous by placing Plaintiff in danger.  Specifically, based on Plaintiff's claims that Defendant Hunter moved Plaintiff to an upper bunk even though another sergeant, when presented with the same information, decided against placing Plaintiff in an upper bunk and advised Defendant Hunter not to move Plaintiff.  See Smith v. Wade, 461 U.S. 30, 53 (1983) (noting that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others").  Further, though unlikely, Plaintiff's claim that Defendant Jameson threatened to make Plaintiff sleep outside if Plaintiff did not move to an upper bunk may be additional evidence of Defendant Jameson's "reckless or callous indifference."  See ECF No. 46, SAC at 8.

Therefore, the Magistrate Judge recommends that the District Judge DENY the Motion to strike the punitive damages claim at this stage.

### V.    RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the Court:

(1)    ACCEPT the findings in this Report or Recommendation;

(2)    GRANT IN PART and DENY IN PART Defendants' Motion [ECF No. 68];

(3)  DISMISS Plaintiff's Claims against Defendant Asuncion;

(4)  DENY Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim and to strike Plaintiff's punitive damages claim; and

(5)  DENY Defendants' Motion based on qualified immunity, at this time.

DATED: <u>May 20, 2020</u>

HON. SHASHI H. KEWALRAMANI
United States Magistrate Judge

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.